UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LUIS ANGEL PESQUERA,

        Petitioner,

v.                                    CASE NO. 06-CV-10186
                                      HONORABLE VICTORIA A. ROBERTS

ANDREW JACKSON,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS**

**I.    Introduction**

Luis Angel Pesquera ("Petitioner"), a Michigan prisoner currently confined at the Mound Correctional Facility in Detroit, Michigan, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of two counts of first-degree criminal sexual conduct and five counts of second-degree criminal sexual conduct following a jury trial in the Monroe County Circuit Court in 1996. He was sentenced as a second habitual offender to concurrent terms of life imprisonment on the first-degree convictions and concurrent terms of 15 to 22 ½ years imprisonment on the second-degree convictions.

In his pleadings, Petitioner raises claims challenging the use of the minor victims' videotaped testimony, the jury instructions, the conduct of the prosecutor, the effectiveness of trial counsel, cumulative error, and appellate court error. For the reasons stated below, the Court denies the petition for writ of habeas corpus.

## II. Facts and Procedural History

Petitioner's convictions arise from his sexual abuse of five children, ages four to six, in a mobile home park in Monroe County, Michigan. Petitioner's brief in support of his petition and Respondent's answer to the petition both rely upon the facts set forth in Petitioner's brief on direct appeal to the state courts. This Court shall thus accept the factual allegations contained in the habeas petition insofar as they are consistent with the record, as Respondent has not disputed them. *See Bland v. California Dep't. of Corrections*, 20 F.3d 1469, 1474 (9th Cir. 1994).

Following his convictions and sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals asserting: (1) a denial of his confrontation rights, (2) improper use of expert and profile evidence, (3) erroneous admission of other acts evidence, and (4) prosecutorial misconduct. The Michigan Court of Appeals affirmed his convictions. *See People v. Pesquera*, 244 Mich. App. 305, 625 N.W.2d 407 (2001). Petitioner then filed a delayed application for leave to appeal with the Michigan Supreme Court, asserting the same claims as well as the following claims: (1) denial of due process and equal rights on all issues related to videotaped depositions, (2) judicial error in instructing the jury, (3) denial of due process and fair trial by all issues and prosecutorial misconduct, (4) ineffective assistance of counsel, and (5) cumulative error. The Michigan Supreme Court denied leave to appeal. *People v. Pesquera*, 466 Mich. 888, 646 N.W.2d 475 (2002).

Petitioner filed his original habeas corpus petition with this Court in February, 2003, raising the same claims presented to the Michigan Supreme Court. The Court dismissed that petition without prejudice for failure to fully exhaust state court remedies on October 3, 2003.

Petitioner thereafter filed a motion for relief from judgment in the state trial court to

exhaust his claims. The trial court issued an order correcting the trial transcript, but otherwise denied the motion. Petitioner then filed an application for leave to appeal with the Michigan Court of Appeals, which was denied "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Pesquera*, No. 259199 (Mich. Ct. App. June 24, 2005) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was similarly denied. *People v. Pesquera*, 474 Mich. 910, 705 N.W.2d 128 (2005).

Petitioner then submitted the present habeas petition asserting the following claims:

I. He was deprived of his constitutional right to a fair and impartial trial under both due process and equal protection rights on all issues related to the videotaped depositions used in his trial.

II. The court committed reversible error by instructing the jury that: "You must convict the defendant here because you think he is guilty of other bad conduct" and refusing to disclose the entire record for appellate review on direct appeal as of right.

III. He was deprived of his constitutional right to due process and a fair trial by all the claims evidencing prosecutorial misconduct which requires a new trial.

IV. He was deprived of his liberty and a fair proceeding where his trial lawyer was ineffective on all claims presented and failed to move for complete discovery for potential defense documents, statements and records to combat the adversary process, U.S. Const. Ams VI and XIV.

V. The cumulative effect of all errors combined in this case sufficiently deprived him of his right to a fair and balanced trial where the cumulative error violated the ruling in *Chambers v. Mississippi* requiring reversal under the 14th Amendment of the U.S. Constitution.

VI. Petitioner was denied due process of law where the Michigan Court of Appeals and the Michigan Supreme Court applied a contrary to, or an unreasonable application of, clearly established federal law on his federal constitutional claims requiring reversal and a new trial in light of *Crawford v. Washington*.

Respondent has filed an answer to the petition asserting that it should be denied because the

claims lack merit and/or are barred by procedural default.

**III.    Analysis**

　　A.    Videotaped Testimony Claims

Petitioner challenges the admission of the child victims' videotaped testimony at trial on several grounds. Defendant was charged with the sexual assault of five children, ages four to six, who lived in the mobile home trailer park where he resided. Before trial, the prosecution moved for special courtroom arrangements whereby the children would give videotaped depositions in lieu of live testimony in Petitioner's presence in open court. At the hearing on the motion, the mothers of the child victims testified regarding the impact that Petitioner's presence would have on each of the children. The mothers each indicated that their child or children were afraid of Petitioner, were reluctant to talk about the situation, exhibited acting-out and/or regressive behavior since the incidents, would be upset by Petitioner's presence, and would have difficulty or be unable to testify with Petitioner in the same room.

Two therapists who treated some of the children testified as expert witnesses at the hearing. One therapist testified that the children she treated would be psychologically or emotionally harmed by having to testify in front of Petitioner and that seeing him could cause the children to disassociate and be unable to testify. The other therapist testified that the child she treated was afraid of Petitioner and would only be able to testify if Petitioner were in a different room. Over Petitioner's objection, the trial court granted the prosecution's motion for special courtroom arrangements. *See* 8/7/96 Hrg. Transcript.

The Michigan Court of Appeals described the special courtroom arrangements employed at trial as follows:

> On the first day of trial, the children's testimony was videotaped. The children testified in the courtroom with the judge, prosecutor, and defense counsel present. The jury was not present. Defendant watched the proceedings live by way of closed-circuit television. Defendant was allowed to consult with his counsel between direct examination and cross-examination of the children. The videotaped testimony was played for the jury on the second day of trial after opening statements by counsel.

*Pesquera*, 244 Mich. App. at 309.

        1.        Confrontation Claim

Petitioner first asserts that he is entitled to habeas relief because the trial court violated his confrontation rights by admitting the videotaped testimony of the child victims at trial rather than requiring a direct, face-to-face confrontation with live testimony before the jury. Respondent contends that this claim lacks merit.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . ." U.S. Const. amend. VI. The Confrontation Clause provides criminal defendants the right to confront and cross-examine witnesses against them. *See Davis v. Alaska*, 415 U.S. 308, 315 (1973). The Confrontation Clause ordinarily guarantees a criminal defendant a "face-to-face meeting with witnesses appearing before the trier of fact." *Coy v. Iowa*, 487 U.S. 1012, 1016 (1988). This guarantee, however, is not absolute.

In *Maryland v. Craig*, 497 U.S. 836, 858 (1990), the United States Supreme Court upheld, over a defendant's Sixth Amendment challenge, a Maryland rule of criminal procedure which allows child victims of abuse to testify via one-way closed circuit television from outside the courtroom. Under Maryland's procedure, the defendant could see the testifying child witness on a video monitor, but the child witness could not see the defendant. In rejecting the

5

defendant's contention that his confrontation rights were violated because he was denied a face-to-face encounter with the witness, the Supreme Court stated: "though we reaffirm the importance of face-to-face confrontation with witnesses appearing at trial, we cannot say that such confrontation is an indispensable element of the Sixth Amendment's guarantee of the right to confront one's accusers." *Id*. at 849-50. A defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial when such action is "necessary to further an important public policy" and when "the reliability of the testimony is otherwise assured." *Id*. at 850.[1] The Court reasoned:

> the right guaranteed by the Confrontation Clause includes not only a personal examination ... but also (1) insures that the witness will give his statements under oath – thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the greatest legal engine ever invented for the discovery of truth; [and] (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility.
>
> The combined effect of these elements of confrontation – physical presence, oath, cross-examination, and observation of demeanor by the trier of fact – serves the purposes of the Confrontation Clause by ensuring that evidence admitted against an accused is reliable....

*Id*. at 845-46 (citations and internal quotations omitted).

The Court went on to hold that "if the State makes an adequate showing of necessity, the state interest in protecting the child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify the use of a special procedure that permits a child witness in

---

[1] The federal government and many states, including Michigan, have passed legislation permitting remote testimony by child victims, either by closed-circuit television or videotaped deposition, to protect them from the trauma of testifying against their alleged assailants face-to-face. *See, e.g.*, 18 U.S.C.A. § 3509; Mich. Comp. L. § 600.2163a(13), (14); *see also Craig*, 497 U.S. at 853-54, n. 2-4 (listing state statutes).

such cases to testify at trial against a defendant in the absence of face-to-face confrontation with the defendant." *Id.* at 855. The finding of necessity must be case-specific. In particular, the trial court must find that: (1) the child witness "would be traumatized, not by the courtroom setting generally, but by the presence of the defendant," and that (2) the emotional distress suffered by the child witness "is more than *de minimis*, *i.e.,* more than mere nervousness or excitement or some reluctance to testify." *id.* at 855-56, such that it would impair the child's ability to communicate. *Id.* at 857.

Citing *Craig* and applying the Michigan statutory scheme, the Michigan Court of Appeals concluded that Petitioner's confrontation rights were not violated by the use of the videotaped statements at trial. The court found that necessity was established by the young ages of the children, the mothers' testimony discussing the children's intense fear of Petitioner, their reluctance to discuss the abuse, and their regressive behavior, as well as the testimony of the two therapists who opined that the children they had treated would not be able to testify in Petitioner's presence. The court further determined that the videotape procedures adequately protected Petitioner's rights because the trial court determined that the children were competent to testify before they were sworn, the judge presided over the examinations, Petitioner viewed the testimony via closed circuit television and was able to consult with counsel and assist during cross-examination, and the jury was able to view the appearance and demeanor of the children. *See Pesquera*, 244 Mich. App. at 309-14.

Having reviewed the record, this Court finds that the Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The trial court in this case made a specific finding of necessity for the

special courtroom arrangements as required by *Craig*. The court determined that the child victims would be emotionally traumatized if they had to testify about the sexual abuse in Petitioner's presence and that they would not be able to reliably testify in a face-to-face confrontation. The court based its findings on the children's ages, their mothers' testimony, and their therapists' testimony.[2] Additionally, the trial court's special arrangements adequately protected Petitioner's confrontation rights because the children were required to testify under oath before the judge, were subject to full cross-examination with Petitioner's participation, and were able to be evaluated by the jury when the videotapes were played at trial. Under such circumstances, Petitioner's confrontation rights were not violated. *See, e.g., Danner v. Motley*, 448 F.3d 372 (6th Cir. 2006) (habeas petitioner's confrontation rights were not violated by Kentucky state court's procedure allowing minor victim to testify via closed circuit television in sexual assault case where trial court found that the victim would be unable to reliably testify against the petitioner in open court). Habeas relief is not warranted on this claim.

    2.    Other Claims

Petitioner also raises additional claims regarding the admission of the videotaped testimony, namely that: (1) the testimony of the victims' mothers should not have been accepted by the trial court in determining the necessity of special courtroom arrangements, (2) he was denied an expert to rebut opinion testimony, (3) the videotaped testimony was dubbed and altered and the prosecution did not obtain parental consent to videotape the children, (4) the

---

[2] The fact that the children were able to identify Petitioner in a face-to-face confrontation at the conclusion of their testimony does not negate the trial court's finding of necessity. One can reasonably conclude that testifying at length about the instances of sexual abuse in Petitioner's presence would be more difficult and traumatic for the children than identifying him in a brief encounter after their examinations.

testimony using anatomically-correct dolls should not have been admitted into evidence, and (5) he was prejudiced because the videotape referenced jail attire. Respondent contends that these claims are barred by procedural default because Petitioner failed to raise those claims in the Michigan Court of Appeals on direct appeal of his convictions.

Petitioner first properly presented these claims to the state courts in his motion for relief from judgment. The trial court noted that the transcript had been corrected with regard to the jury instruction issue but denied the motion because Petitioner's claims could have been raised in his prior appeals. Both Michigan appellate courts denied leave to appeal "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)."

Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991). A petitioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case rested its judgment on the procedural default. *Wainwright*, 433 U.S. at 85; *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001). In such a case, a federal court must determine not only whether a petitioner has failed to comply with state procedures, but also whether the state court relied on the procedural default or, alternatively, chose to waive the procedural bar. "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last *explained* state court judgment should be used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a

9

silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

Here, the Michigan Supreme Court relied upon Michigan Court Rule 6.508(D) in denying leave to appeal. That rule provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. *See* Mich. Ct. R. 6.508(D). The state court's decision, while brief, was based upon an independent and adequate state procedural rule. *See Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000). Further, the record reveals that the trial court denied the motion for relief from judgment because Petitioner failed to properly present his claims to the appellate courts. *Cf. Abela v. Martin*, 380 F.3d 915, 922-23 (6th Cir. 2004) (Michigan Supreme Court's reference to MCR 6.508(D) may not be clear procedural default when a lower court denies relief on the merits).

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). The "cause" standard in procedural default cases "requires the petitioner to show that some objective factor external to the defense impeded counsel's efforts to raise the claim in state court." *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (citations omitted). Such factors may include interference by officials, attorney error rising to the level of ineffective assistance of counsel, or a showing that the factual or legal basis for a claim was not reasonably

10

available. *Id.* at 493-94.

Petitioner neither alleges nor establishes cause to excuse his procedural default on these claims. This Court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *See, e.g., Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983); *Bell v. Smith*, 114 F. Supp. 2d 633, 638 (E.D. Mich. 2000) (Gadola, J.).

Lastly, Petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *See Schlup v. Delo,* 513 U.S. 298, 326-27 (1995); *Murray v. Carrier*, 477 U.S. at 496. ""[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has made no such showing. His remaining claims concerning the videotaped testimony are thus barred by the doctrine of procedural default and do not warrant habeas relief.

B.  Jury Instruction Claim

Petitioner asserts that he is entitled to habeas relief because the trial court erred in instructing the jury by stating: "You must convict the defendant here because you think he is guilty of other bad conduct" and by refusing to disclose the entire record for appellate review. Respondent contends that this claim is barred by procedural default and lacks merit.

11

This Court agrees with Respondent. First, this jury instruction claim is barred by procedural default because Petitioner failed to raise it before the Michigan Court of Appeals on direct appeal of his convictions and he has failed to demonstrate cause or prejudice or that a fundamental miscarriage of justice has occurred. *See* discussion *supra* regarding defaulted videotaped testimony claims. Second, the claim clearly lacks merit. The record reveals that the alleged improper jury instruction was merely a typographical error in the trial transcripts. The jury received appropriate oral and written instructions at the time of trial. Habeas relief is not warranted on this claim.

C. Prosecutorial Misconduct Claims

Petitioner asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by vouching for the prosecution witnesses, referencing prior bad acts as evidence of guilt, shifting the burden of proof, and withholding exculpatory evidence and/or using false testimony because the true assailant is an incarcerated woman. Respondent contends that these claims lack merit and/or are barred by procedural default.

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The United States Court of Appeals for the Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights. *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases). First, the court must determine

whether the challenged statements were indeed improper. *Id*. at 452. Upon a finding of impropriety, the court must decide whether the statements were flagrant. *Id.* Flagrancy is determined by an examination of four factors: 1) whether the statements tended to mislead the jury or prejudice the accused; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused. *Id.*; *see also Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000) (citing *United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999)). "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (citations omitted).

The Michigan Court of Appeals determined that the prosecution's conduct did not deny Petitioner a fair trial, finding that the other acts evidence was properly admitted at trial, that Petitioner opened the door to the prosecutor's comments about his sexual history and past, and that the prosecutor's comments were responsive to defense counsel's comments. *See Pesquera*, 244 Mich. App. at 320-21. Having reviewed the record, the Court finds that the Michigan Court of Appeals' decision in this regard is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.

Petitioner first asserts that the prosecutor vouched for the prosecution's witnesses and expressed a personal belief in Petitioner's guilt with the use of such phrases as "I believe ..." and "I have no doubt..." or "I don't believe ...." It is well-settled that it is improper for a prosecutor to express his or her own personal beliefs as to a defendant's guilt or to express personal

13

opinions concerning a witness's credibility. *See United States v. Young*, 470 U.S. 1, 9-10 (1985); *United States v. Modena*, 302 F.3d 626, 634 (6th Cir. 2002). Such statements are improper because they can convey the impression that the prosecutor has evidence not presented to the jury which supports the charge against the defendant thereby infringing upon the defendant's right to be judged solely based upon the evidence presented and because the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own. *See United States v. White*, 58 Fed. Appx. 610, 617-18, 2003 WL 152314, *7 (6th Cir. 2003) (citing cases).

While the prosecutor prefaced some comments during arguments with the phrase "I believe..." or similar such phrases, the prosecutor referenced the evidence presented at trial and argued that Petitioner's guilt was supported by that evidence. The prosecutor's arguments were based upon reasonable inferences from the evidence. A prosecutor has leeway to argue reasonable inferences from the evidence. *See Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000).. Moreover, a prosecutor may argue from the facts that a witness is (or is not) worthy of belief. *Portuondo v. Agard*, 529 U.S. 61, 69 (2000). The prosecutor did not express a personal belief in Petitioner's guilt nor improperly vouch for prosecution witnesses. Rather, the prosecutor argued that Petitioner's guilt had been established beyond a reasonable doubt based upon the evidence.

Petitioner also asserts that the prosecutor referenced prior bad acts as evidence of guilt and urged the jury to convict him because he is a bad man. This claim lacks merit. As noted by the Michigan Court of Appeals, the other acts evidence regarding Petitioner's conduct with children was properly admitted under Michigan law as evidence of a common scheme or plan. *See Pesquera*, 244 Mich. App. at 316-20. Consequently, Petitioner cannot establish that the

prosecution erred. Further, Petitioner has not shown, and the record does not indicate, that the prosecution improperly argued the prior bad acts as substantive evidence of guilt. The trial court also instructed the jury about the proper consideration of the evidence. Additionally, Petitioner has not demonstrated that the prosecution improperly delved into his past sexual history. The prosecutor's questions and arguments were responsive to the defense.

Petitioner also asserts that the prosecution shifted the burden of proof. While it is improper for the prosecution to impliedly shift the burden of proof to a defendant, *see United States v. Clark*, 982 F.2d 965, 968-69 (6th Cir. 1993), a prosecutor may argue from the facts that a witness is (or is not) worthy of belief, *see Portuondo*, 529 U.S. at 69, and may argue reasonable inferences from the evidence. *See Byrd*, 209 F.3d at 535. In this case, the prosecutor's comments were proper comments on the credibility of witnesses, were a permissible attack on the defense theory of the case, and were responsive to defense arguments. The prosecutor did not improperly shift the burden of proof to the defense. Furthermore, the trial court instructed the jury on the burden of proof during trial. Jurors are presumed to follow the court's instructions. *See United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow it.").

Petitioner also asserts that the prosecution relied upon false testimony and withheld exculpatory evidence because the true assailant is an incarcerated woman. To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *See Coe v. Bell,* 161 F.3d 320, 343 (6th Cir. 1998) (citing *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989)). The burden is

on the defendant to show that the testimony was actually perjured. *Id*. Furthermore, the knowing use of false or perjured testimony constitutes a denial of due process only "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976); *Coe,* 161 F.3d at 343.

A prosecutor's failure to disclose evidence favorable to the defense constitutes a denial of due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). In other words, to find a *Brady* violation, not only must the evidence be suppressed, but the suppressed evidence must be material and favorable to the accused. *Elmore v. Foltz*, 768 F.2d 773, 777 (6th Cir. 1985). Favorable evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682; *see also Kyles v. Whitley*, 514 U.S. 419, 432-36 (1995). Material evidence is that which is "so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce." *United States v. Clark*, 988 F.2d 1459, 1467 (6th Cir. 1993). The duty to disclose favorable evidence includes the duty to disclose impeachment evidence. *Bagley, supra*; *Giglio v. United States*, 405 U.S. 150, 154-55 (1972). The *Brady* rule only applies to "the discovery, after trial, of information which had been known to the prosecution but unknown to the defense." *Agurs*, 427 U.S. at 103; *see also Mullins v. United States*, 22 F.3d 1365, 1370-71 (6th Cir. 1994). There is no *Brady* violation if the defendant knew or should have known the essential facts permitting him to take advantage of the information in question, or if the information was available from another source. *See Carter v. Bell*, 218 F.3d 581, 601-03 (6th Cir. 2000); *Coe*, 161 F.3d at 344.

Petitioner has failed to allege any facts which demonstrate that the prosecution withheld exculpatory evidence, that any particular testimony was false, or that the prosecution knowingly presented false testimony. Petitioner references "a plethora of statements" and "medical records of all witnesses," but provides no such materials or other evidence to the Court in support of his claims. He also asserts that the witnesses were assaulted by "a woman who is convicted an in prison," but fails to disclose her identity or provide any documentation in support of his assertion. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell*, 160 F.3d 276, 287 (6th Cir. 1998). Petitioner has not shown that the prosecution withheld exculpatory evidence or knowingly presented false testimony. He is thus not entitled to habeas relief on such a basis.

Lastly, to the extent that Petitioner did not present any of the prosecutorial misconduct claims to the Michigan Court of Appeals on direct appeal of his convictions, those claims are barred by procedural default. Petitioner has not established cause or prejudice or that a fundamental miscarriage of justice has occurred. *See* discussion *supra* regarding defaulted videotaped testimony claims. Habeas relief is not warranted on Petitioner's prosecutorial misconduct claims.

      D.    <u>Ineffective Assistance of Counsel Claim</u>

Petitioner asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to obtain exculpatory evidence from residents of the trailer park where the sexual assaults occurred. Respondent contends that this claim is barred by procedural default. The Court agrees with Respondent that this ineffective assistance of trial counsel claim is barred by procedural default because Petitioner failed to present it to the Michigan Court of Appeals on

17

direct appeal of his convictions and has failed to demonstrate cause or prejudice or that a fundamental miscarriage of justice has occurred. *See* discussion *supra* regarding defaulted videotaped testimony claims. Habeas relief is therefore not warranted on this claim.

E. Cumulative Error Claim

Petitioner asserts that he is entitled to habeas relief on the basis of cumulative error. Respondent contends that this claim is not cognizable upon habeas review. Petitioner is not entitled to relief based upon the cumulative effect of the alleged errors at trial given this Court's determination that Petitioner's claims are procedurally defaulted and/or lack merit. Further, the United States Court of Appeals for the Sixth Circuit has noted that the United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle,* 291 F.3d 416, 447 (6th Cir. 2002).[3] Habeas relief is not warranted on the basis of cumulative error.

F. Crawford Claim

Lastly, Petitioner asserts that he is entitled to habeas relief because the Michigan appellate courts' decisions are contrary to or an unreasonable application of *Crawford v. Washington*, 541 U.S. 36, 54 (2004) and again argues that face-to-face confrontation is required to satisfy the Confrontation Clause. Respondent contends that this claim lacks merit given the applicability of *Maryland v. Craig, supra,* to the facts of this case. This Court agrees. In *Crawford*, the United States Supreme Court held that the testimonial statement of a witness who does not appear at trial is inadmissible unless the witness is unavailable to testify and the defendant has had a prior opportunity to cross-examine the witness. In this case, the child

---

[3]The Court notes that this claim, like the others raised in Petitioner's motion for relief from judgment, is also procedurally defaulted.

witnesses appeared and testified at trial pursuant to special courtroom arrangements, as allowed by state statute and the Supreme Court's decision in *Craig*. Moreover, Petitioner was able to view those witnesses and to fully cross-examine them with the assistance of defense counsel. The Supreme Court did not state that it was overruling *Craig* in *Crawford* and this Court is not free to so decide. *See, e.g., State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) ("it is [the Supreme Court's] prerogative alone to overrule one of its precedents"); *see also United States v. Sandoval*, 2006 WL 1228953, *10-11 (D. N.M. March 7, 2006) (courts have upheld the continuing validity of *Craig* since *Crawford*). Habeas relief is not warranted on this claim.

## IV. Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims contained in his petition.

Accordingly,

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

                                                **S/Victoria A. Roberts**
                                                **Victoria A. Roberts**
                                                **United States District Judge**

**Dated: September 25, 2007**

> **The undersigned certifies that a copy of this document was served on the attorneys of record and pro se petitioner by electronic means or U.S. Mail on September 25, 2007.**
>
> **s/Carol A. Pinegar**
> **Deputy Clerk**